**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

| | | |
|---|---|---|
| **SHEILA JACKSON** | : | |
| | : | |
| Plaintiff, | : | **Case No.:** |
| | : | |
| **V.** | : | **Judge:** |
| | : | |
| **REGAL BELOIT AMERICA, INC.** | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT WITH JURY DEMAND**

Comes now the Plaintiff, Sheila Jackson, by and through counsel, and for her Complaint with Jury Demand against the Defendant states as follows:

**PRELIMINARY STATEMENT**

1. This is a damages action arising under 42 U.S.C. §12101, *et seq.*, the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C.§ 2000ff, *et seq.*, Title II of the Genetic Information Nondiscrimination Act of 2008 ("GINA"), as amended, 42 U.S.C. §2000e, *et seq.,* Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. §1981, the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.S. § 2601, *et seq.*, and supplemental state law claims against the Defendant for disability discrimination (disparate treatment and disparate impact), failure to accommodate, and race discrimination.

**PARTIES AND JURISDICTION**

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

2. The Plaintiff, Sheila Jackson, was at all times herein a resident of Covington, Kenton County, Kentucky. Prior to her termination from employment with Defendant, she was employed by the Defendant as a First Shift Value Added Packer, Grade 5, until she was displaced to a lower grade position on February 11, 2015 and terminated from employment on February 11, 2016. The Plaintiff's place of employment was located in Florence, Boone County, Kentucky.

3. The Defendant, Regal Beloit America, Inc., is a Kentucky foreign corporation, with its principal place of business in Beloit, Wisconsin, and licensed to do business and doing business in the Eastern District of Kentucky, including at its facility located in Florence, Boone County, Kentucky.

4. The Plaintiff filed two Charges of Discrimination related to this matter with the Equal Employment Opportunity Commission ("EEOC") against the Defendant. Charge No.1 (473-2015-01247) was filed on September 21, 2015 alleging discrimination and retaliation under the ADA and GINA. Charge No. 2 (473-2016-00590) was filed on April 25, 2016 alleging discrimination and retaliation under the ADA and Title VII of the Civil Rights Act of 1964.

5. The EEOC issued the Plaintiff a Right-to-Sue letter concerning Charge No.1 dated April 14, 2016 and received by the Plaintiff several days later. The EEOC issued the Plaintiff a Right-to-Sue letter concerning Charge No.2 dated May 3, 2016 and received by the Plaintiff several days later. The Plaintiff has exhausted her administrative remedies.

6. Jurisdiction is conferred on this Court under 42 U.S.C. § 12117, 42 U.S.C. §2000e-5, 42 U.S.C. §2000ff-6, and 28 U.S.C. §1331.

7. Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state law claims which are so related to the federal law claims that they form one case or controversy for Article III purposes.

8. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

9. The Plaintiff was diagnosed with Sigmoid Carcinoma in July 2014. She underwent treatment for her cancer, which included surgical intervention in 2014. As a result of her condition, the Plaintiff was significantly limited in her ability to eat, walk, and work. Though currently in remission, this condition would substantially limit her ability to eat, walk, and work if active. This condition has also significantly impacted the anatomical structure of her digestive system, a major bodily function. The Plaintiff continues to treat for the condition by way of routine blood tests to monitor the presence of any cancerous cells.

10. Prior to her termination from employment, the Plaintiff was employed with the Defendant since the Defendant purchased her previous employer in January 2015. Prior to the acquisition by the Defendant, the Plaintiff worked at the plant in Florence, Kentucky for 14 years. At the time of her cancer diagnosis she was working as a First Shift Value Added Packer, Grade 5. This position required her to operate power equipment, including a forklift. The Plaintiff was a full time employee of the Defendant during her employment.

11. Upon information and belief, at all relevant times herein, the Defendant employed more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding year of 2014 and otherwise meets the definition of an "employer" for purposes of the ADA, GINA, Title VII of the Civil Rights Act of 1964, and the Kentucky Civil Rights Act.

12. Upon information and belief, at all relevant times herein, the Defendant employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the

current or preceding calendar year of 2014, and employed these individuals within 75 miles of the Plaintiff's worksite, and otherwise meets the definition of "employer" for purposes of the FMLA.

13. On or about July 22, 2014 the Plaintiff took a medical leave of absence to combat her cancer. Prior to taking leave, the Plaintiff provided Defendant's Human Resources representative with a copy of a medical report from her physician indicating her diagnosis, and requesting medical leave. The Plaintiff was required during her leave to provide the Defendant with Disability Status Reports. The last report she submitted to the Defendant on August 21, 2014 indicated she could return to work as soon as September 2, 2014, though with work restrictions which would last until October 1, 2014.

14. On or about September 4, 2014, the Plaintiff's treating physician completed a Return to Work Medical Certification Form which cleared her for full duty beginning October 1, 2014.

15. Following successful treatment of her condition, the Plaintiff returned to work in October 2014. At the time of her return to work the Plaintiff was able to perform the essential functions of her job with no accommodations, and was no longer taking prescribed medication.

16. Despite working her normal job duties, and performing her job duties competently (including the operation of power equipment), and the job duties of other employees, in January 2015 the Plaintiff was required by the Defendant to attend a fitness for duty examination in order to evaluate her ability to work the power equipment her position required her to operate.

17. On or about January 15, 2015 the Plaintiff attended a fitness for duty examination with St. Elizabeth Business Health Services physician Brent Haskell, M.D. The Plaintiff performed the physical examination demanded by Dr. Haskell, provided a urine sample, and underwent examinations of her ears and eyes. The examination lasted approximately half of an hour to an

hour. The Plaintiff did not refuse to perform any examination requested by Dr. Haskell. At the end of the examination Dr. Haskell did not indicate any deficiencies in the Plaintiff's performance or otherwise question her physical or psychological abilities to perform her job. However, following the examination Dr. Haskell requested the Plaintiff provide him with all of her medical records for his review. Upon information and belief, this request was made because of the conversation that took place at the end of the examination between the Plaintiff and Dr. Haskell concerning Dr. Haskell's knowledge of her cancer diagnosis. Upon information and belief, he had been made aware of the diagnosis by representatives of the Defendant. He did not ask the Plaintiff any specific questions related to the condition, he only informed her wanted he wanted to "talk about it." The Plaintiff surmised Dr. Haskell apparently had the information she provided to the Defendant before and during her medical leave concerning her cancer diagnosis. Following the examination, Dr. Haskell noted on two separate documents that the Plaintiff attended physical examination but was placing her on hold "pending receipt of additional information." The information requested concerned "Surgery – All medical records," "1. Current diagnosis of your medical condition, 2. The treatment you have received to date, 3. The prognosis, 4. Any relevant tests (include results), 5. List of any medications you are receiving and any restrictions arising from their use, 6. Any restrictions or limitations that may limit your activities at home or at work and the time period during which those restrictions will be in effect, 7. Any additional information that your medical provider thinks would help us to make our medical recommendation."

   18. The Plaintiff did not want to provide Dr. Haskell, or anyone else associated with the Defendant, all of her medical records. Indeed, there was no need to request all of her medical records. The Plaintiff had successfully performed Dr. Haskell's examination and had submitted a

urine sample (which should have demonstrated she was no longer taking any prescription medication which might impair her ability to operate equipment). The Plaintiff's medical records contain information protected by GINA, including her family history and genetic information, information concerning genetic testing, and information concerning the manifestation of her Sigmoid Carcinoma. Dr. Haskell specifically requested this protected information ("4. Any relevant tests (include results)."

19. Furthermore, the Plaintiff successfully performed her job duties, without any instances of deficient work performance, following her return to work and until she was displaced from her position on February 11, 2015.

20. The day following the fitness for duty examination, the Plaintiff discussed the request for her medical records with Defendant's Human Resources employee Nicole George. Ms. George explained she agreed the Plaintiff's medical records were not needed by the Defendant and informed the Plaintiff that if she provided her with a written certification from her physician concerning her fitness for duty she could continue to work in her position. The Plaintiff promptly contacted her physician, M. Ryan Moon, M.D. with St. Elizabeth Physicians, who provided the requested certification to the Defendant on January 16, 2015, indicating "Sheila Jackson is able to drive any type of vehicles since she was released to go back to work without restrictions. If you have any questions please contact my office." The Defendant received identical information in the Plaintiff's Return to Work Medical Certification Form provided in September 2014.

21. Approximately two weeks following the January 15, 2015 fitness for duty examination and her meeting with Ms. George, the Plaintiff was approached during her shift by Defendant's employee Mike Tobias who informed the Plaintiff that she was going to be required to be provide her medical records to the Defendant. The Plaintiff explained to Mr. Tobias she believed

the situation was resolved after she provided Ms. George with the requested note from her doctor which allowed her return to work. Mr. Tobias indicated he would check with Ms. George.

22. The Plaintiff was subsequently summoned to a meeting with Ms. George and informed she now needed to provide all of her medical records to the Defendant. The Plaintiff refused to provide the Defendant with all of her medical records. Upon information and belief, the Defendant's policy concerning fitness for duty examinations does not contain a requirement that all employees must provide their medical records to the Defendant or a Defendant's medical representative in order to successfully pass the examination. Upon information and belief, the Defendant wanted to see her medical records to learn more about her cancer, including whether or not she could be afflicted with the condition in the future.

23. On February 11, 2015 the Plaintiff was displaced by the Defendant into a lower grade position, a Grade 3 position, due to "the inability to operate a powered industrial equipment per the incomplete medical screening results." She was instructed she had one year to bid into another position with the company that does not require operation of powered industrial equipment. She was informed failure to bid and accept another position before February 11, 2016 would result in her placement into any open job, and if she refused to accept that employment her employment would be terminated. It is clear that at least at the time of her displacement from her Grade 5 job the Defendant regarded the Plaintiff as being disabled.

24. The Plaintiff reluctantly accepted the displacement, realizing the only other option she had was losing her employment with the Defendant. During her employment in the Grade 3 position the Plaintiff performed her work exceptionally, and without incident.

25. The Plaintiff filed Charge No. 1 with the EEOC on September 21, 2015 as the result of her demotion.

26. Following her displacement, the Plaintiff discovered through conversations with co-workers that at least three Caucasian similarly situated employees had been treated better than she was treated. She discovered employee Brenda Hambry failed a fitness for duty examination and was allowed to remain in her position, which included operating power equipment. She discovered following a fitness for duty examination employee Calvin Jarvis's medical records were requested by the Defendant. He did not provide his medical records and was permitted to remain in his position. She discovered employee Sheila Lawson was not required to provide her medical records to the Defendant following a fitness for duty examination.

27. On February 11, 2016 the Plaintiff requested a return to her position as First Shift Value Added Packer, Grade 5. Instead, she received a document from Ms. George which indicated the Plaintiff had not bid into another position at the company and the Plaintiff "elected not to go and get a medical screening that could have cleared [her] to operate a Powered Industrial Vehicle and have more opportunities within the facility." She was offered three Grade 3 positions, a Grade 7 night position, and a Grade 7 2nd shift position. None of these positions were similar in nature to her First Shift Value Added Packer, Grade 5 position. The Plaintiff was informed that refusal to accept one of these positions would result in the termination of her employment. The Plaintiff did not desire these positions, and as a result the Defendant terminated her employment.

28. At the time of her termination, the Defendant was aware of Charge No. 1 which the Plaintiff had filed with the EEOC on September 21, 2015 as the result of her demotion.

29. At all times herein, the Plaintiff was qualified for her position as a First Shift Value Added Packer, Grade 5 with the Defendant as evidenced by her more than 14 years of employment with the Defendant or its predecessor, and her exemplary work record before and after her cancer diagnosis.

30. If not for the Plaintiff's disability, her participation with the EEOC in filing charge No. 1, her predisposition to cancer and potential future diagnosis as perceived by the Defendant, her refusal to allow the Defendant to collect her protected genetic information, her opposition to the Defendant's attempt to collect her protected genetic information or otherwise illegally discriminate against her, and her race, the Defendant would not have displaced the Plaintiff from her position and subsequently terminated the Plaintiff's employment.

31. Upon information and belief, the Plaintiff was eventually replaced by someone who did not suffer from a disability and was outside of her protected race-based class.

## COUNT I

### (VIOLATION OF THE ADA AND KENTUCKY CIVIL RIGHTS ACT – DISPARATE TREATMENT AND RETALIATION)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

32. The acts of the Defendant, as previously described, constitute disability discrimination in violation of the ADA and the Kentucky Civil Rights Act. The Plaintiff was disabled, was qualified for her position with or without reasonable accommodation, the Defendant knew about the Plaintiff's disability, and displaced her from her job on February 11, 2015 and ultimately terminated her employment because of her disability on February 11, 2016. Upon information and belief, the Plaintiff was replaced by a nondisabled individual.

33. Additionally, the Plaintiff engaged in protected activity when she filed Charge No. 1 with the EEOC. As a result of filing Charge No. 1, alleging the Defendant engaged in disability discrimination, the Defendant terminated the Plaintiff's employment on February 11, 2016.

34. As a proximate result of the Defendant's illegal discrimination and retaliation, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

## COUNT II

## (VIOLATION OF GINA – DISPARATE TREATMENT, UNLAWFUL REQUEST FOR INFORMATION, RETALIATION)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

35. The Defendant discriminated against the Plaintiff as the result of Defendant's perception that she was genetically predisposed to develop cancer to in the future, which could adversely affect her ability to work in the future in violation of GINA. As a result of this belief, the Defendant displaced the Plaintiff from her job position on February 11, 2015 and terminated her employment on February 11, 2016.

36. Additionally, the Defendant unlawfully required the Plaintiff to produce medical records which contain protected genetic information about the Plaintiff in violation of GINA. The Defendant displaced the Plaintiff from her job position on February 11, 2015 and terminated her employment on February 11, 2016 as a result of her refusal to provide this protected information.

37. Finally, the Plaintiff engaged in protected activity when she filed Charge No. 1 with the EEOC alleging violation of GINA. As a result of filing Charge No. 1, alleging the Defendant engaged violation of GINA, the Defendant terminated the Plaintiff's employment on February 11, 2016.

38. As a proximate result of the Defendant's illegal discrimination and retaliation, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

## COUNT III

### (RACE DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §1981, AND THE KENTUCKY CIVIL RIGHTS ACT – DISPARATE TREATMENT)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

39. The Plaintiff is a member of a class of individuals protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and the Kentucky Civil Rights Act; specifically she is African-American.

40. Because of the Plaintiff's race, the Defendant treated her worse than other similarly situated employees outside of her protected class by displacing her from her position on February 11, 2015 and ultimately terminating her employment on February 16, 2016.

41. Upon information and belief, the Plaintiff was replaced by an individual outside of her protected race-based class.

42. As a proximate result of the Defendant's illegal conduct, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

## COUNT IV

### (FMLA INTERFERENCE AND RETALIATION)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

43. The Plaintiff was entitled to 12 weeks of FMLA leave from July 22, 2014 until and including October 22, 2014.

44. After the Plaintiff returned to work the Defendant removed the Plaintiff from her normal job position, or a similar job position, and demoted the Plaintiff on February 11, 2015 and ultimately terminated her employment on February 11, 2016. The Defendant's actions effectively interfered with the Plaintiff's right to job restoration and job benefits, and also constitutes retaliation against the Plaintiff for exercising her rights under the FMLA to take protected leave and requesting job restoration and benefits. The Defendant's actions in this matter were willful and in bad faith.

45. As a proximate result of the Defendant's illegal conduct, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. For all back pay, pre-judgment interest, fringe benefits, and any other appropriate relief necessary to make Plaintiff whole, including compensatory damages for emotional distress, humiliation and embarrassment;

B. For reinstatement to her former position with Defendant;

C. For an award of punitive damages;

D.  For an award of liquidated damages;

E.  For Plaintiff's costs herein expended, including reasonable attorney's fees;

F.  For a trial by jury on all issues so triable; and

G.  For any and all other relief to which Plaintiff appears entitled.

RESPECTFULLY SUBMITTED,

ROUSH AND STILZ, P.S.C.

/s/ W. Kash Stilz, Jr.
W. KASH STILZ, JR.
19 West Eleventh Street
Covington, Kentucky 41011-3003
(859) 291 – 8400 telephone
(859) 291 – 6555 facsimile
kash@roushandstilzlaw.com
ATTORNEYS FOR PLAINTIFF