**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENUTCKY**
**COVINGTON DIVISION**

SHEILA JACKSON,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )      CASE NO.:  2:16-cv-00134-DLB-CJS
                                         )
REGAL BELOIT AMERICA, INC.,              )
                                         )
            Defendant.                   )

## DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Defendant Regal Beloit America, Inc., ("Regal") now answers Plaintiff Sheila Jackson's Amended Complaint.  For ease of future reference, Plaintiff's allegations are set forth below *verbatim*, with Regal's responses immediately following each allegation.

### PRELIMINARY STATEMENT

1.      This is a damages action arising under 42 U.S.C. § 12101, *et seq.,* the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 2000ff, *et seq.,* Title II of the Genetic Information Nondiscrimination Act of 2008 ("GINA"), as amended, Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.S. § 2601, *et seq.* and supplemental state law claims against the Defendant.

**ANSWER:**    Regal admits that Plaintiff alleges violations of the identified statutes, but denies violating any of these laws.  Regal denies the remaining allegations in this paragraph.

## PARTIES AND JURISDICTION

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

2.      The Plaintiff, Sheila Jackson, was at all times herein a resident of Covington, Kenton County, Kentucky. Prior to her termination from employment with Defendant, she was employed by the Defendant as a First Shift Value Added Packer, Grade 5, until she was displaced to a lower grade position on February 11, 2015 and terminated from employment on February 11, 2016.  The Plaintiff's place of employment was located in Florence, Boone County, Kentucky.

**ANSWER:**     Regal admits that it employed Plaintiff in its Florence, Kentucky facility as a First Shift Value Added Packer, Grade 5, until she was displaced on February 11, 2015.  Regal also admits that it terminated her employment on February 11, 2016.  Regal denies that it displaced Plaintiff "to a lower grade position."  Regal has insufficient information to admit or deny the remaining allegations in this paragraph and therefore denies them.

3.      The Defendant, Regal Beloit America, Inc., is a Kentucky foreign corporation, with its principal place of business in Beloit, Wisconsin, and licensed to do business and doing business in the Eastern District of Kentucky, including at its facility located in Florence, Boone County, Kentucky.

**ANSWER:**     Regal admits the allegations contained in this paragraph.

4.      The Plaintiff filed two Charges of Discrimination related to this matter with the Equal Employment Opportunity Commission ("EEOC") against the Defendant.  Charge No. 1 (473-2015-01247) was filed on September 21, 2015 alleging discrimination and retaliation under the ADA and GINA.  Charge No. 2 (473-2016-00590) was filed on April 25, 2016 alleging discrimination and retaliation under the ADA and Title VII of the Civil Rights Act of 1964.

2

**ANSWER:**    Regal admits that Plaintiff filed the two identified charges with the Equal Employment Opportunity Commission.   Regal denies all allegations of wrongdoing in those charges and denies all remaining allegations in this paragraph.

5.      The EEOC issued the Plaintiff's Right-to-Sue letter concerning Charge No. 1 dated April 14, 2016 and received by the Plaintiff several days later.   The EEOC issued the Plaintiff's Right-to-Sue letter concerning Charge No. 2 dated May 3, 2016 and received by the Plaintiff several days later.   The Plaintiff has exhausted her administrative remedies.

**ANSWER:**    Regal admits that the EEOC issued the two Right-to-Sue letters concerning Plaintiff's charges of discrimination on the dates indicated.   Whether Plaintiff has exhausted her administrative remedies is a legal conclusion to which no response is required.   Regal has insufficient information to admit or deny the remaining allegations in this paragraph and therefore denies them.

6.      Jurisdiction is conferred on this Court under 42 U.S.C. § 12117, 42 U.S. C. § 2000e-5, 42 U.S.C. § 2000ff-6, and 28 U.S. C. § 1331.

**ANSWER:**    Regal admits the allegations contained in this paragraph.

7.      Jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state law claims which are so related to the federal law claims that they form one case or controversy for Article III purposes.

**ANSWER:**    Regal admits the allegations in this paragraph.

8.      Venue in this district is proper pursuant to 28 U. S. C. § 1391.

**ANSWER:**    Regal admits the allegations in this paragraph.


## FACTUAL BACKGROUND

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

9.      The Plaintiff was diagnosed with Sigmoid Carcinoma in July 2014.  She underwent treatment for her cancer, which included surgical intervention in 2014.  As a result of her condition, the Plaintiff was significantly limited in her ability to eat, walk, and work. Though currently in remission, this condition would substantially limit her ability to eat, walk, and work if active. This condition has also significantly impacted the anatomical structure of her digestive system, a major bodily function. The Plaintiff continues to treat for the condition by way of routine blood tests to monitor the presence of any cancerous cells.

**ANSWER:**    Regal has insufficient information to admit or deny the allegations in this paragraph and therefore denies them.


10.      Prior to her termination from employment, the Plaintiff was employed with the Defendant since the Defendant purchased her previous employer in January 2015. Prior to the acquisition by the Defendant, the Plaintiff worked at the plant in Florence, Kentucky for 14 years. At the time of her cancer diagnosis she was working as a First Shift Value Added Packer, Grade 5. This position required her to operate power equipment, including a forklift. The Plaintiff was a full time employee of the Defendant during her employment.

**ANSWER:**    Regal has insufficient information to admit or deny the allegations regarding Plaintiff's diagnosis and therefore denies them.  Regal admits that it now operates the facility where Plaintiff worked in Florence, Kentucky and that Regal acquired some of the operations of Plaintiff's

4

previous employer.  Regal admits that it employed Plaintiff as First Shift Value Added Packer, Grade 5 and that the position required Plaintiff to operate power equipment, including a forklift. Regal also admits it employed Plaintiff as a full time employee.  Regal denies any remaining allegations in this paragraph.

11.     Upon information and belief, at all relevant times herein, the Defendant employed more than 15 employees for each working day in each of 20 or more calendar weeks in the current or preceding year of 2014 and otherwise meets the definition of an "employer" for purposes of the ADA, GINA, and the Kentucky Civil Rights Act.

**ANSWER:**    Regal admits that during its operations and ownership of the facility in Florence, Kentucky where the Plaintiff worked, it employed more than 15 employees for each working day in each of 20 or more calendar weeks in 2015 and otherwise meets the definition of an "employer" for the purposes of the cited statutes.  Regal denies the remaining allegations in this paragraph.

12.     Upon information and belief, at all relevant times herein, the Defendant employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year of 2014, and employed these individuals within 75 miles of the Plaintiff's worksite, and otherwise meets the definition of "employer" for purposes of the FMLA.

**ANSWER:**    Regal admits that during its operations and ownership of the facility in Florence, Kentucky where the Plaintiff worked, it employed more than 15 employees for each working day in each of 20 or more calendar weeks in 2015 and otherwise meets the definition of an

5

"employer" for the purposes of the FMLA.  Regal denies any remaining allegations in this paragraph.

13.    On or about July 22, 2014 the Plaintiff took a medical leave of absence to combat her cancer. Prior to taking leave, the Plaintiff provided Defendant's Human Resources representative with a copy of a medical report from her physician indicating her diagnosis, and requesting medical leave. The Plaintiff was required during her leave to provide the Defendant with Disability Status Reports. The last report she submitted to the Defendant on August 21, 2014 indicated she could return to work as soon as September 2, 2014, though with work restrictions which would last until October 1, 2014.

**ANSWER:**    Regal admits that on or about July 22, 2014, Plaintiff took a medical leave of absence reportedly to combat cancer.  Regal has insufficient information to admit or deny the reason for the medical leave and therefore denies this allegation.  Regal did not own the Florence, Kentucky facility where the Plaintiff worked at that time and therefore denies the remaining allegations in this paragraph.

14.    On or about September 4, 2014, the Plaintiff's treating physician completed a Return to Work Medical Certification Form which cleared her for full duty beginning October 1, 2014.

**ANSWER:**    Regal admits the allegations in this paragraph.

15.    Following successful treatment of her condition, the Plaintiff returned to work in October 2014. At the time of her return to work the Plaintiff was able to perform the essential functions of her job with no accommodations, and was no longer taking prescribed medication.

**ANSWER:**    Regal admits that Plaintiff returned to work for the predecessor company in October 2014 and that she was able to perform the essential functions of her job with no accommodations.  Regal has insufficient information to admit or deny the remaining allegations in this paragraph and therefore denies them.

16.    Despite working her normal job duties, and performing her job duties competently (including the operation of power equipment), and the job duties of other employees, in January 2015 the Plaintiff was required by the Defendant to attend a fitness for duty examination in order to evaluate her ability to work the power equipment her position required her to operate.

**ANSWER:**  Regal denies the allegations in this paragraph.

17.    On or about January 15, 2015 the Plaintiff attended a fitness for duty examination with St. Elizabeth Business Health Services physician Brent Haskell, M.D. The Plaintiff performed the physical examination demanded by Dr. Haskell, provided a urine sample, and underwent examinations of her ears and eyes. The examination lasted approximately half of an hour to an hour. The Plaintiff did not refuse to perform any examination requested by Dr. Haskell. At the end of the examination Dr. Haskell did not indicate any deficiencies in the Plaintiff's performance or otherwise question her physical or psychological abilities to perform her job. However, following the examination Dr. Haskell requested the Plaintiff provide him with all of her medical records for his review.  Upon information and belief, this request was made because of the conversation that took place at the end of the examination between the Plaintiff and Dr. Haskell concerning Dr. Haskell's knowledge of her cancer diagnosis.  Upon information and belief, he had been made aware of the diagnosis by representatives of the Defendant.  He did not ask the Plaintiff any specific questions related to the condition, he only informed her wanted he wanted to "talk about it." The

7

Plaintiff surmised Dr. Haskell apparently had the information she provided to the Defendant before and during her medical leave concerning her cancer diagnosis. Following the examination, Dr. Haskell noted on two separate documents that the Plaintiff attended physical examination but was placing her on hold "pending receipt of additional information." The information requested concerned "Surgery - All medical records," "1. Current diagnosis of your medical condition, 2. The treatment you have received to date, 3. The prognosis, 4. Any relevant tests (include results), 5. List of any medications you are receiving and any restrictions arising from their use, 6. Any restrictions or limitations that may limit your activities at home or at work and the time period during which those restrictions will be in effect, 7. Any additional information that your medical provider thinks would help us to make our medical recommendation."

**ANSWER:**   Regal Beloit admits that on January 15, 2015, Plaintiff submitted to an examination with St. Elizabeth Business Health Services physician Brent Haskell, M.D.  Regal denies that this examination was a fitness for duty examination.  Regal admits that following the examination, Dr. Haskell noted on two separate documents that Plaintiff attended the physical examination but he was placing her on hold "pending receipt of additional information."  Regal admits that Plaintiff has correctly quoted these documents.  Regal has insufficient information to admit or deny the remaining allegations in this paragraph and there for denies them.


18.   The Plaintiff did not want to provide Dr. Haskell, or anyone else associated with the Defendant, all of her medical records.  Indeed, there was no need to request all of her medical records.  The Plaintiff had successfully performed Dr. Haskell's examination and had submitted a urine sample (which should have demonstrated she was no longer taking any prescription medication which might impair her ability to operate equipment). The Plaintiff's medical records contain information protected by GINA, including her family history and genetic information,

8

information concerning genetic testing, and information concerning the manifestation of her Sigmoid Carcinoma. Dr. Haskell specifically requested this protected information ("4. Any relevant tests (include results)." [sic]

**ANSWER:**   Regal has insufficient information to admit or deny the allegations in this paragraph and therefore denies them.

19.    Furthermore, the Plaintiff successfully performed her job duties, without any instances of deficient work performance, following her return to work and until she was displaced from her position on February 11, 2015.

**ANSWER:** Regal denies the allegations in this paragraph.

20.    The day following the fitness for duty examination, the Plaintiff discussed the request for her medical records with Defendant's Human Resources employee Nicole George.  Ms. George explained she agreed the Plaintiff's medical records were not needed by the Defendant and informed the Plaintiff that if she provided her with a written certification from her physician concerning her fitness for duty she could continue to work in her position. The Plaintiff promptly contacted her physician, M. Ryan Moon, M.D. with St. Elizabeth Physicians, who provided the requested certification to the Defendant on January 16, 2015, indicating "Sheila Jackson is able to drive any type of vehicles since she was released to go back to work without restrictions.  If you have any questions please contact my office." The Defendant received identical information in the Plaintiff's Return to Work Medical Certification Form provided in September 2014.

**ANSWER:** Regal admits that Plaintiff discussed the request for her medical records with Regal's Human Resources employee Nicole George. Regal admits that George informed Plaintiff that she needed to provide the information requested.  Regal admits that on or about January 16,

2015, Plaintiff provided it with documentation ostensibly from M. Ryan Moon, M.D. with St. Elizabeth Physicians. Regal admits that Plaintiff accurately quotes this documentation. Regal also admits that this documentation contained the same information that was in Plaintiff's Return to Work Medical Certification Form provided in September 2014. Regal denies the remaining allegations in this paragraph.

21.     Approximately two weeks following the January 15, 2015 fitness for duty examination and her meeting with Ms. George, the Plaintiff was approached during her shift by Defendant's employee Mike Tobias who informed the Plaintiff that she was going to be required to be [sic] provide her medical records to the Defendant. The Plaintiff explained to Mr. Tobias she believed the situation was resolved after she provided Ms. George with the requested note from her doctor which allowed her return to work. Mr. Tobias indicated he would check with Ms. George.

**ANSWER:**  Regal admits that its employee Mike Tobias met with Plaintiff during her shift approximately two weeks after January 15. 2015.  Regal also admits that Plaintiff told Tobias that she believed the situation was resolved after she provided George with a note from her doctor which indicated that she could return to work.  Regal admits that Tobias told Plaintiff that he would check with George.  Regal denies the remaining allegations in this paragraph.

22.     The Plaintiff was subsequently summoned to a meeting with Ms. George and informed she now needed to provide all of her medical records to the Defendant.  The Plaintiff refused to provide the Defendant with all of her medical records.  Upon information and belief, the Defendant's policy concerning fitness for duty examinations does not contain a requirement that all employees must provide their medical records to the Defendant or a Defendant's medical representative in order to successfully pass the examination.  Upon information and belief, the

10

Defendant wanted to see her medical records to learn more about her cancer, including whether or not she could be afflicted with the condition in the future.

**ANSWER:**  Regal admits that Plaintiff was subsequently summoned to a meeting with George.  Regal admits that Plaintiff refused to provide her medical records to the doctor selected by Regal.  Regal denies the remaining allegations in this paragraph.


23.     On February 11, 2015 the Plaintiff was displaced by the Defendant into a lower grade position, a Grade 3 position, due to "the inability to operate a powered industrial equipment per the incomplete medical screening results."  She was instructed she had one year to bid into another position with the company that does not require operation of powered industrial equipment. She was informed failure to bid and accept another position before February 11, 2016 would result in her placement into any open job, and if she refused to accept that employment her employment would be terminated.  It is clear that at least at the time of her displacement from her Grade 5 job the Defendant regarded the Plaintiff as being disabled.

**ANSWER:**  Regal denies regarding Plaintiff as disabled.  Regal admits that it displaced Plaintiff, but denies that she was displaced "into a lower position, a Grade 3 position."  Regal admits the remaining allegations in this paragraph.


24.     The Plaintiff reluctantly accepted the displacement, realizing the only other option she had was losing her employment with the Defendant. During her employment in the Grade 3 position the Plaintiff performed her work exceptionally, and without incident.

**ANSWER:**  Regal has insufficient information to admit or deny whether Plaintiff "reluctantly accepted the displacement," and therefore denies this allegation.  Regal denies remaining allegations in this paragraph.

25.     The Plaintiff filed Charge No. 1 with the EEOC on September 21, 2015 as the result of her demotion.

**ANSWER:**     Regal admits that Plaintiff filed a charge with the EEOC on or about September 21, 2015.  Regal denies demoting Plaintiff.  Regal has insufficient evidence to admit or deny the remaining allegations in this paragraph and therefore denies them.

26.     Following her displacement, the Plaintiff discovered through conversations with co-workers that at least three Caucasian similarly situated employees had been treated better than she was treated. She discovered employee Brenda Hambry failed a fitness for duty examination and was allowed to remain in her position, which included operating power equipment. She discovered following a fitness for duty examination employee Calvin Jarvis's medical records were requested by the Defendant. He did not provide his medical records and was permitted to remain in his position. She discovered employee Sheila Lawson was not required to provide her medical records to the Defendant following a fitness for duty examination.

**ANSWER:**     Regal denies the allegations in this paragraph.

27.     On February 11, 2016 the Plaintiff requested a return to her position as First Shift Value Added Packer, Grade 5. Instead, she received a document from Ms. George which indicated the Plaintiff had not bid into another position at the company and the Plaintiff "elected not to go and get a medical screening that could have cleared [her] to operate a Powered Industrial Vehicle and have more opportunities within the facility." She was offered three Grade 3 positions, a Grade 7 night position, and a Grade 7 2nd shift position. None of these positions were similar in nature to her First Shift Value Added Packer, Grade 5 position. The Plaintiff was

12

informed that refusal to accept one of these positions would result in the termination of her employment. The Plaintiff did not desire these positions, and as a result the Defendant terminated her employment.

**ANSWER:** Regal admits that George provided Plaintiff with a document which indicated the Plaintiff had not bid into another position at the company and the Plaintiff "elected not to go and get a medical screening that could have cleared [her] to operate a Powered Industrial Vehicle and have more opportunities within the facility." Regal admits offering Plaintiff three Grade 3 positions, a Grade 7 night position, and a Grade 7 second shift position. Regal admits informing Plaintiff that refusal to accept one of these positions would result in the termination of her employment. Regal denies that on February 11, 2016, Plaintiff requested a return to her position as First Shift Value Added Packer, Grade 5. Regal has insufficient information to admit or deny the remaining allegations in this paragraph and therefore denies them.

28. At the time of her termination, the Defendant was aware of Charge No. 1 which the Plaintiff had filed with the EEOC on September 21, 2015 as the result of her demotion.

**ANSWER:** Regal admits that certain officials within its organization were aware of Charge No. 1 on September 21, 2015. Regal denies any suggestion of wrongdoing and denies the remaining allegations this paragraph.

29. At all times herein, the Plaintiff was qualified for her position as a First Shift Value Added Packer, Grade 5 with the Defendant as evidenced by her more than 14 years of employment with the Defendant or its predecessor, and her exemplary work record before and after her cancer diagnosis.

**ANSWER:** Regal denies the allegations in this paragraph.

13

30.     If not for the Plaintiff's disability, her participation with the EEOC in filing charge No. 1, her predisposition to cancer and potential future diagnosis as perceived by the Defendant, her refusal to allow the Defendant to collect her protected genetic information, her opposition to the Defendant's attempt to collect her protected genetic information or otherwise illegally discriminate against her, and her race, the Defendant would not have displaced the Plaintiff from her position and subsequently terminated the Plaintiff's employment.

**ANSWER:**     Regal denies the allegations in this paragraph.


31.     Upon information and belief, the Plaintiff was eventually replaced by someone who did not suffer from a disability and was outside of her protected race-based class.

**ANSWER:**     Regal admits that it eventually replaced Plaintiff with someone of a different race than Plaintiff.  Regal has insufficient information to admit or deny the remaining allegations in this paragraph and therefore denies them.


### COUNT I

### (VIOLATION OF THE ADA AND KENTUCKY CIVIL RIGHTS ACT - DISPARATE TREATMENT AND RETALIATION)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

32.     The acts of the Defendant, as previously described, constitute disability discrimination in violation of the ADA and the Kentucky Civil Rights Act. The Plaintiff was disabled, was qualified for her position with or without reasonable accommodation, the Defendant knew about the Plaintiff's disability, and displaced her from her job on February 11, 2015 and ultimately terminated her employment because of her disability on February 11, 2016. Upon information and belief, the Plaintiff was replaced by a nondisabled individual.

14

**ANSWER:**     Regal denies the allegations in this paragraph.

33.     Additionally, the Plaintiff engaged in protected activity when she filed Charge No. 1 with the EEOC. As a result of filing Charge No. 1, alleging the Defendant engaged in disability discrimination, the Defendant terminated the Plaintiff's employment on February 11, 2016.

**ANSWER:**     Regal denies the allegations in this paragraph.

34.     As a proximate result of the Defendant's illegal discrimination and retaliation, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights. Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

**ANSWER:**     Regal denies the allegations in this paragraph.

## COUNT II

### (VIOLATION OF GINA - DISPARATE TREATMENT, UNLAWFUL REQUEST FOR INFORMATION, RETALIATION)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

35.     The Defendant discriminated against the Plaintiff as the result of Defendant's perception that she was genetically predisposed to develop cancer to in the future, which could adversely affect her ability to work in the future in violation of GINA. As a result of this belief, the Defendant displaced the Plaintiff from her job position on February 11, 2015 and terminated her employment on February 11, 2016.

**ANSWER:**     Regal denies the allegations in this paragraph.

15

36.     Additionally, the Defendant unlawfully required the Plaintiff to produce medical records which contain protected genetic information about the Plaintiff in violation of GINA.  The Defendant displaced the Plaintiff from her job position on February 11, 2015 and terminated her employment on February 11, 2016 as a result of her refusal to provide this protected information.

**ANSWER:**     Regal denies the allegations in this paragraph.


37.     Finally, the Plaintiff engaged in protected activity when she filed Charge No. 1 with the EEOC alleging violation of GINA. As a result of filing Charge No. 1, alleging the Defendant engaged violation of GINA, the Defendant terminated the Plaintiff's employment on February 11, 2016.

**ANSWER:**     Regal denies the allegations in this paragraph.


38.     As a proximate result of the Defendant's illegal discrimination and retaliation, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights.   Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

**ANSWER:**     Regal denies the allegations in this paragraph.


## COUNT  III

### (FMLA  INTERFERENCE AND RETALIATION)

Plaintiff incorporates by reference all preceding paragraphs and further alleges as follows:

39.     The Plaintiff was entitled to 12 weeks of FMLA leave from July 22, 2014 until and including October 22, 2014.

**ANSWER:**     Regal denies the allegations this paragraph.

40.     After the Plaintiff returned to work the Defendant removed the Plaintiff from her normal job position, or a similar job position, and demoted the Plaintiff on February 11, 2015 and ultimately terminated  her employment on February  11, 2016.  The Defendant's actions effectively interfered with the Plaintiff's right to job restoration and job benefits, and also constitute retaliation against the Plaintiff for exercising her rights under the FMLA to take protected leave and requesting job restoration and benefits.  The Defendant's actions in this matter were willful and in bad faith.

**ANSWER:**     Regal denies the allegations in this paragraph.

41.     As a proximate result of the Defendant's illegal conduct, the Plaintiff has suffered and continues to suffer irreparable harm, including but not limited to loss of income, benefits, and other valuable job rights.  Plaintiff has suffered from and continues to suffer from emotional distress, humiliation and embarrassment, all for which she should be compensated.

**ANSWER:**     Regal denies the allegations in this paragraph.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

A.     For all back pay, pre-judgment interest, fringe benefits, and any other appropriate relief  necessary  to  make  Plaintiff  whole,  including  compensatory  damages  for emotional distress, humiliation and embarrassment;

B.     For reinstatement to her former position with Defendant;

C.     For an award of punitive damages;

D.     For an award  of liquidated damages;

17

E.     For Plaintiff's costs herein expended, including reasonable attorney's fees;

F.     For a trial by jury on all issues so triable; and

G.     For any and all other relief to which Plaintiff appears entitled.

**ANSWER:**   Regal admits that Plaintiff has requested a jury trial. Whether Plaintiff is entitled to a jury trial is a question of law to which no responsive pleading is required. Answering further, Regal specifically objects to Plaintiff's jury request to the extent her claims are equitable or otherwise not properly heard by a jury. Regal denies that Plaintiff is entitled to judgment in her favor and denies that she is entitled to any of the requested relief.

## GENERAL DENIAL

Regal-Beloit denies any allegations in Plaintiff's Complaint that have not been expressly admitted.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff fails to state a claim for which relief can be granted.

### SECOND DEFENSE

Subject to a reasonable opportunity for investigation and discovery, some or all of Plaintiff's claims may be barred by the applicable statute of limitations.

### THIRD DEFENSE

Subject to a reasonable opportunity for investigation and discovery, Plaintiff has failed to mitigate her damages.

### FOURTH DEFENSE

Subject to a reasonable opportunity for investigation and discovery, Plaintiff's remedies may be limited by the doctrine of after-acquired evidence.

### FIFTH DEFENSE

Subject to a reasonable opportunity for investigation and discovery, some of Plaintiff's claims may be barred for her failure to exhaust administrative remedies.

### SIXTH DEFENSE

Regal had legitimate, non-discriminatory reasons for its actions regarding Plaintiff.

### SEVENTH DEFENSE

Regal at all times exercised good faith in its employment practices and made good faith efforts to comply with its legal obligations.

### EIGHTH DEFENSE

Plaintiff's claims for damages are barred or limited by the US Constitution, the Kentucky Constitution, and all other applicable laws, including all applicable statutory caps

## NINTH DEFENSE

To the extent that Regal requested and/or obtained Plaintiff's medical information, any request or acquisition of genetic information was inadvertent.

## TENTH DEFENSE

Regal reserves the right to add additional defenses as further investigation and discovery reveal information relating to Plaintiff's claims and its defenses.

Regal respectfully requests that the Court enter judgment against Plaintiff and in favor of Regal, that the Court dismiss Plaintiff's Complaint with prejudice, that Regal be awarded the fees and costs incurred in its defense of this matter, and that Regal be granted all other appropriate relief.

Respectfully submitted,

*s/ Mark D. Scudder*
Mark D. Scudder
**BARNES & THORNBURG LLP**
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802
Telephone:  (260) 425-4618
Facsimile:   (260) 424-8316
Email:   mark.scudder@btlaw.com

COUNSEL FOR DEFENDANT,
REGAL BELOIT AMERICA, INC.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the above and foregoing document has been

served this 14th day of December, 2017, by electronically filing the same with the Clerk of the

Court using the CM/ECF system which sent notification of such filing to the following:

> W. Kash Stilz, Jr.
> ROUSH AND STILZ, P.S.C.
> 9 West Eleventh Street
> Covington, Kentucky  41011-3003

> *s/ Mark D. Scudder*
> Mark D. Scudder

DMS 11261211v1