**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENUTCKY**
**COVINGTON DIVISION**

| | | |
|---|---|---|
| SHEILA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:16-cv-00134-DLB-CJS |
| | ) | |
| REGAL BELOIT AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Shelia Jackson went to a routine medical examination for her employer, refused to provide the examining physician with any of her historical medical records, refused assistance from her employer in complying with the doctor's requests, and refused alternative positions that did not require a medical exam. Even though Plaintiff's refusal to cooperate with the medical exam made her unable to perform the essential functions of her current position, Regal Beloit America, Inc. ("Regal") maintained Plaintiff's level of pay for an entire year while she considered her options. When Plaintiff refused all options offered to resolve the situation—including new positions that would have increased Plaintiff's pay—Regal was forced to terminate Plaintiff's employment.

Plaintiff now claims that Regal discriminated against her on the basis of an alleged disability and a genetic predisposition to develop cancer, denied her medical leave, retaliated against her for exercising her rights under various statutes, and inappropriately requested genetic information from her. Plaintiff's claims are baseless. Regal terminated Plaintiff's employment because her position required her to operate a forklift and Regal's policy provided for periodic

physical exams for all such drivers to confirm that they could safely operate this equipment. When Plaintiff refused to provide the examining doctor with records regarding her recent surgery, she made herself unqualified for her position. Further, Plaintiff refused other positions that would not have required a medical exam. There simply is no evidence that Regal's decision to terminate Plaintiff related in any way to her alleged disability or alleged genetic predisposition.

Plaintiff's remaining claims also fail. There is no evidence that Regal ever denied Plaintiff medical leave or that its decision to terminate her employment related in any way to her prior use of medical leave. To the extent that Plaintiff believed that the doctor selected by Regal had requested her genetic information, any such request was inadvertent as the doctor clearly delineated that he only wanted to see Plaintiff's surgical records. Plaintiff never explained to Regal or the doctor that she thought his request included genetic information, as she could have easily done.

Regal requests, and is entitled to, summary judgment on all of Plaintiff's claims as there are no genuine issues of material fact.

## I. STATEMENT OF MATERIAL FACTS

### A. Regal Beloit America, Inc.

Regal Beloit America, Inc. ("Regal") is a manufacturer of electric motors and has its principal office in Beloit, Wisconsin. (George Affidavit ("George Aff."), ¶ 3.) In February 2015, Regal acquired Emerson Electric Company's ("Emerson") Power Transmission Solutions business. (Deposition of Nicole George, ("George Dep."), p. 6.) This acquisition included the facility in Florence, Kentucky. (George Aff. ¶ 3.)

Maintaining a workplace free of discrimination is a priority for all Regal companies. (George Aff. ¶ 5.) For this reason, Regal maintains and enforces an Equal Employment

Opportunity Policy that prohibits employment decisions based on any protected characteristic. (George Dep., p. 11, dep. ex. 1; George Aff. ¶ 5.) Regal also maintains a Global Respect and Dignity Policy that prohibits any form of illegal harassment, discrimination, intimidation, or retaliation in the workplace. (*Id.*)

**B. Plaintiff Begins Working for Regal**

Jackson worked for Regal as a Value Added Packer, Grade 5, in its Florence, Kentucky facility. (George Dep., pp. 34-35, dep. ex. 6.) Regal assigned Jackson to a swing shift, working from 11:30 a.m. to 8:00 p.m. (Deposition of Sheila Jackson ("Pltf. Dep.") p. 51.) In this position, Regal required Jackson to operate a forklift. (*Id.* at 17-18.) Pursuant to OSHA regulations, Regal has a Powered Industrial Equipment Licensing Procedure, which requires employees to undergo medical exams at least every three years to confirm that they can safely operate powered industrial equipment ("PIE") such as forklifts. (George Dep., p. 14, dep. ex. 2.)

**C. Plaintiff Takes FMLA Leave And Returns To Her Position**

In July 2014, Plaintiff took FMLA leave for surgery to treat colon cancer. (Pltf. Dep., pp. 31-32.) Plaintiff informed her employer (Emerson at that time) of her diagnosis and surgery when she turned in the appropriate FMLA certification forms. (*Id.* at 32-33.) Plaintiff returned to work in her previous position in September 2014 with no restrictions. (*Id.* at 36.) Plaintiff admits that she received all the FMLA leave she requested in the summer of 2014. (Pltf. Dep., pp. 124-126, dep. ex. 11; George Aff. ¶ 17.)

**D. Regal Sends Plaintiff To A Periodic Medical Examination, But She Refuses To Cooperate**

On January 15, 2015, Regal sent Jackson to St. Elizabeth Business Health ("St. Elizabeth") for a medical examination to confirm that she could safely operate a forklift. (Pltf. Dep., pp. 41-42; George Dep., p. 24; George Aff. ¶ 6.) St. Elizabeth assigned Dr. Haskell to

examine Jackson. (George Dep., pp. 14-15, 17-18, dep. ex. 2.) Jackson claims that she did not complete any documents during her examination with Dr. Haskell regarding her medical history. (Pltf. Dep., pp. 37-38; 104.) Despite this, the records from Dr. Haskell contain an unsigned, typed medical history questionnaire indicating that she had surgery and that she had refused to discuss the nature of the surgery. (Affidavit of Mark Scudder ("Scudder Aff.") ¶ 7, aff. ex. B.) It did not mention cancer. (*Id.*) Jackson says Dr. Haskell asked her about her past cancer diagnosis, which surprised her because she claims she had not mentioned it to him. (Pltf. Dep., pp. 36-37.) She refused to answer his questions. (*Id.*)

## E. <u>Regal Works With Plaintiff To Complete Her Medical Examination</u>

Afterward, St. Elizabeth sent Regal a letter entitled "medical condition clarification" indicating that Jackson had two weeks to provide additional records regarding her surgery. (George Dep., p. 29, dep. ex. 5; George Aff. ¶ 7.) The letter made no mention of cancer. (*Id.*) The letter specifically listed seven delineated categories of needed information needed:

> Medical Condition of Concern: Surgery - All medical records (1) Current diagnosis of your medical condition; (2) The treatment you have received to date; (3) The prognosis; (4) Any relevant tests (include results); (5) List of any medications you are receiving and any restrictions arising from their use; (6) Any restrictions or limitations that may limit your activities at home or at work; and (7) Any additional information that your medical provider thinks would help us to make our medical recommendation.

(*Id.*)

Human Resources Manager Nicole George met with Jackson and discussed Dr. Haskell's request for additional information. (George Dep., p. 29, dep. ex. 5.) Jackson claimed that Dr. Haskell physically examined her and found no problems, so she objected to providing him with any records. (Pltf. Dep., p. 39.) However, after talking to George, she agreed to give George a note from her personal doctor, Dr. Moon, indicating that it was safe for her to operate PIE. (*Id.*)

George agreed that she would forward to Dr. Haskell whatever information Jackson obtained from Dr. Moon. (George Dep., p. 72.)

## F. Plaintiff Still Refuses To Provide The Requested Medical Information

On January 16, Dr. Moon provided Plaintiff with a letter that said: "Shelia Jackson is able to drive any [t]ype of vehicles since she was release[d] to go back to work without restrictions." (Pltf. Dep., p. 43, dep. ex. 5.) George provided Dr. Moon's letter to Dr. Haskell, but Dr. Haskell responded that the information was insufficient and therefore the examination could not be completed. (George Dep., pp. 33; 72, dep. ex. 5.)

In her deposition (and only in retrospect), Jackson claimed that she did not want to provide more records to Dr. Haskell because her medical records indicated that she had a family history of cancer, high blood pressure, and strokes. (Pltf. Dep., pp. 128-130, 139, dep. ex. 12.) She acknowledged that George informed her that any records provided directly to Dr. Haskell would not be given to Regal. (*Id.* at 64-65.) Dr. Haskell would only inform Regal of whether the examination was complete and whether Jackson could operate PIE. (George Dep., p. 49.) Jackson did not believe George because she thought that George had informed Dr. Haskell about her FMLA leave for cancer treatment. (Pltf. Dep., pp. 37-38, 105.) George denies providing any such information to Dr. Haskell. (George Dep., p. 25.) Plaintiff did not explain to Regal that she did not wish to produce her family history to Dr. Haskell. (George Aff. ¶ 15.) Instead, she simply said she would not give Dr. Haskell any of her medical records. (*Id.*) If Plaintiff had expressed concern about producing family history, Regal would have suggested that she provide the records with whatever family history information removed or redacted. (*Id*.) Likewise, Plaintiff admitted that she did not offer to provide the information listed in Dr. Haskell's letter with the family history redacted. (Pltf. Dep., p. 139.)

## G. Regal Displaces Plaintiff; Plaintiff's Allegations of Disparate Treatment

On February 13, 2015, George and supervisor Mike Tobias met with Jackson and informed her that her incomplete medical screen prevented her from operating any PIE, including a forklift. (George Dep., p. 34; George Aff. ¶ 8.) As a result, Jackson had had two immediate options: (1) accept an open position that did not require use of any PIE, or (2) accept displacement from her current position and instead perform whatever miscellaneous tasks were needed at the facility that did not require use of any PIE. (George Aff. ¶ 9.) While displaced, Regal would keep her pay rate at its current level, even though she would be doing lower rate work. (George Dep., pp. 38; 68-69.) Jackson chose displacement. (Pltf. Dep., pp. 47-49, dep. ex. 6.) Regal made clear that displacement was only available for one year. (*Id.)* After that, Jackson had to accept an open position or Regal would be forced to terminate her employment. (*Id.*)

After Jackson elected displacement, she continued to work for Regal at the same rate of pay, even though she was not using PIE. (George Dep., pp. 38, 68-69.) George reminded Jackson that she could still submit the requested medical records to Dr. Haskell so that he could complete her examination. (George Dep., p. 65, dep. ex. 5; Pltf. Dep., p. 62, dep. ex. 8.) Jackson considered this, but again refused. (*Id.*) During this time, Jackson could have bid on any open position. (George Aff. ¶ 10.) Jackson admits that she did not check open position job board during her displacement. (Pltf. Dep., p. 74.) During the year that Jackson was displaced, there were approximately 35 open positions that did not require the employee to undergo a medical exam. (George Dep., p. 37, dep. ex. 7; George Aff. ¶ 10.) Jackson did not bid on any of them. (*Id.*) Based upon her seniority, Jackson would have received at least 22 of those positions had she bid on them. (George Aff. ¶ 10.)

### H. <u>Regal Terminates Plaintiff's Employment When She Refuses To Provide The Requested Medical Information Or Accept An Open Position</u>

In February 2016, Jackson still had not bid on any open positions, including multiple open positions that did not require the use of powered industrial equipment, nor had she produced the requested information to Dr. Haskell. (George Dep., pp. 39-40, dep. ex. 8.) George again presented Jackson with a list of open positions, including some grade 3 positions on first shift that worked from 7:00 am to 3:30 pm. (*Id.*) These positions would have paid Jackson approximately 90% of the pay she received in her grade 5 position. (George Aff., ¶ 11.) There were also open grade 7 positions on the night shift. (George Dep., pp. 39-40, dep. ex. 8.) These positions would have paid resulted in 5% to 10% pay increase. (George Dep., pp. 63; George Aff. ¶ 12.) Regal was willing to provide whatever training Jackson needed to qualify her for any of these positions. (George Dep., p. 63.) Since Jackson had been without a position as she had been displaced from her prior position one year earlier, Regal determined that it was unreasonable to permit her to remain an employee without a position. (*Id.* at 51, dep. ex. 8.) As a result, Regal terminated Jackson's employment. (*Id.* at 39-40, dep. ex. 8.)

### I. <u>Plaintiff's Filings With The EEOC</u>

Shortly after Regal displaced Plaintiff, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (George Dep., p. 56, George Aff. ¶ 13.) In her Charge, she alleged, among other things, that Regal violated the ADA and GINA by displacing her. (George Aff., ¶ 13.) After Regal terminated her employment in February 2016, she filed a second Charge of Discrimination in which she alleged that her termination violated the ADA and GINA, and added allegations that her termination was retaliation for filing her first EEOC charge. (*Id.* at ¶ 14.) Both Plaintiff's Complaint and Amended Complaint contain retaliation claims. (Docket Entries 1 and 29.)

In her deposition, Plaintiff testified that no one at Regal ever discussed her first EEOC charge with her. (Pltf. Dep., p. 140.) She admitted that she has no reason to think that Regal terminated her employment because of her first EEOC charge. (*Id.*) She acknowledged that before she filed an EEOC charge, Regal told her displacement could not last more than one year. (*Id.*)

## II. APPLICABLE LEGAL STANDARD

As the party seeking summary judgment, Regal has the initial burden of demonstrating the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Sanders v. Bemis Co.*, 2017 U.S. LEXIS 12304 (E.D. Ky. Jan. 30, 2017.) Once it does so, the burden shifts to Plaintiff to identify factual issues that Plaintiff believes necessitate a trial. *Shulman v. Amazon.com.kydc, LLC*, 2015 U.S. Dist. LEXIS 51291 (E.D Ky. Apr. 20, 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).) "The mere existence of a scintilla of evidence in support of the [Plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for [Plaintiff]." *Shulman*, 2015 U.S. Dist. LEXIS 15291, *15 (quoting *Anderson*, 477 U.S. at 252). Even if the facts are construed as Plaintiff contends, she cannot meet her burden and summary judgment is mandated for Regal.

## III. ARGUMENT AND AUTHORITY

Plaintiff makes multiple claims against claims against Regal. First, she claims that Regal discriminated against her on the basis of her alleged disability and retaliated against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq*., as well as the Kentucky Civil Rights Act ("KCRA"), KRS 344.010 *et seq.* She also claims that Regal interfered with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601 *et seq.*, and retaliated against her for exercising her rights under the FMLA. Finally, Plaintiff claims that Regal violated her rights under the Genetic Information Nondiscrimination Act

("GINA") 42 U.S.C. § 2000ff *et seq.*, by discriminating against her for her alleged predisposition to develop cancer, retaliating against her for filing an EEOC charge, and improperly requesting genetic information from her. As set forth below, Regal is entitled to summary judgment on all of Plaintiff's claims.

## A. <u>Regal Did Not Discriminate Against Plaintiff Or Retaliate Against Her In Violation Of The ADA or KCRA</u>

### 1. <u>Plaintiff's has no evidence of disability discrimination</u>

Plaintiff claims that Regal discriminated against her because of her cancer in violation of the ADA and KCRA. (Dkt. 29, Dkt. 29 Am. Compl. ("Dkt. 29 Am. Compl"), ¶¶ 9 and 32.) The Sixth Circuit and this Court have made clear that the same process is used to analyze disability discrimination claims under both the ADA and the KCRA. *Stearman v. Ferro Coals, Inc.*, 2017 U.S. Dist. LEXIS 195020, *15-16 (E.D. Ky. Nov. 28, 2017) (citing *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007).) As a threshold matter, Plaintiff must first establish a *prima facie* case of disability discrimination by showing: (1) she was "disabled" within the meaning of the applicable law; (2) she was qualified for the position at issue, with or without an accommodation; (3) she suffered an adverse employment decision; and (4) a non-disabled person replaced her. *Stearman*, 2017 U.S. Dist. LEXIS 195020 at *16 (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 882 (6th Cir. 1996).) Even if Plaintiff could meet this burden, she would not automatically prevail. Instead, Regal would then have a chance to "set forth a legitimate, nondiscriminatory reason for the adverse employment action." *Stearman*, 2017 U.S. Dist. LEXIS 195020 at *16 (quoting *Kocsis*, 97 F.3d at 883.) Plaintiff would then have to show that Regal's "proffered reasons were . . . merely a pretext for illegal discrimination." *Id.* Plaintiff can establish neither a *prima facie* case of discrimination nor can she show that Regal's reasons for its actions were pretextual.

**a) <u>Plaintiff cannot establish a *prima facie* case of disability discrimination</u>**

In Plaintiff's Complaint, it appears that she points to both her displacement in February 2015 and the termination of her employment in February 2016 as adverse employment actions that were caused by disability discrimination. (Dkt. 29 Am. Compl., ¶ 32.) While her termination was an adverse action, her displacement was not. When Plaintiff was displaced, she continued to work the same shift and received the same pay, even though she did not use PIE. As a result, the displacement does not rise to the level of an adverse employment action. *See Johnson v. Riviana Foods, Inc.*, 2017 U.S. App. LEXIS 24525 *6 (6th Cir. Dec. 4, 2017) (written reprimands which result in no loss of pay, demotion, or suspension do not constitute adverse employment actions)(citing *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013)).

Plaintiff also cannot establish a *prima facie* case of disability discrimination because she cannot show that she was qualified for her position as a Value Added Packer, Grade 5 where she could not establish that she was medically qualified to operate PIE. Plaintiff's position clearly involved the use of PIE. Regal had a uniform policy of requiring all employees who use PIE to be periodically examined by a physician selected by Regal to confirm that the employee could safely use the equipment.[1] Plaintiff never received Dr. Haskell's approval to operate PIE, in violation of Regal's policy.

Regal tried to work with Plaintiff to provide Dr. Haskell with sufficient information to determine whether she could safely operate PIE, but Plaintiff refused to cooperate with Regal. The only thing she was willing to provide was a conclusory note from Dr. Moon which stated she could operate PIE. This note provided no substantive information regarding the reasons for Dr. Moon's conclusion. After producing this note, Plaintiff was unwilling to provide any

[1] Plaintiff has not alleged that Regal's PIE policy violates the ADA.

additional information whatsoever during the year that she was displaced, despite multiple offers from George to work with her to provide Dr. Haskell with the information he needed. While Regal engaged in the interactive process with Plaintiff, Plaintiff caused this process to break down, defeating her claims. *See Meade v. BellSouth Telecomms.*, 2015 U.S. Dist. LEXIS 122918, *18 (E.D. Ky. Nov. 12, 2015) ("When the interactive process breaks down, either due to one party obstructing the process or otherwise failing to participate in good faith, the reviewing court 'should attempted to isolate the cause of the breakdown and then assign responsibility.'") (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, (6th Cir. 2007)).

**b) <u>Plaintiff cannot show that the termination of her employment was a pretext for disability discrimination</u>**

Even if Plaintiff could establish a *prima facie* case of disability discrimination—which she cannot—her claims would only survive Regal's motion for summary judgment if she could show that the proffered reason for her termination—her failure to be approved to operate PIE or accept a new position—was a pretext for disability discrimination. To show pretext, Plaintiff must show "both that the [Regal's] proferred reason was not the real reason for its action and that [Regal's] real reason was unlawful." *Land v. Southern States Coop., Inc.*, 2016 U.S. Dist. LEXIS 122183, *34 (E.D. Ky. Sept. 9, 2016) (citing *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015)). The facts show that Regal was motivated by Plaintiff's failure to show that she could operate a PIE or accept another position. Further, Regal's willingness to assist Plaintiff in providing addition information to Dr. Haskell shows that it was not motivated by disability discrimination. If it was so motivated, it would have not tried to help her remain in her position. Likewise, it would not have offered her multiple positions that did not involve the operation of a PIE or require plaintiff to undergo a medical exam. If Regal's goal was to eliminate an employee who had cancer and/or who might develop cancer again, offering her

another position completely undermines this alleged goal. Plaintiff simply has no evidence of pretext, defeating her disability discrimination claims.

### 2. <u>Plaintiff cannot establish that she was a victim of retaliation</u>

Plaintiff claims that Regal terminated her employment in retaliation for filing her initial EEOC charge. To establish a *prima facie* case for retaliation under the ADA or the KCRA, Plaintiff must show that: (1) she engaged in protected activity, (2) Regal knew that she exercised a protected right, (3) an adverse employment action was subsequently taken against her, and (4) there was a causal connection between the protected activity and the adverse employment action. *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014) (citing *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009)). Even if Plaintiff could establish a *prima facie* case of retaliation, she would then need to show that Regal's legitimate, nondiscriminatory reasons for its actions were pretextual. *Banks*, 15 F. Supp. 3d at 693 (citing *Hamilton*, 556 F.3d at 435).

Plaintiff admits that no one at Regal ever mentioned her EEOC charge and that she has no reason to believe that her termination related to the filing of her EEOC charge. (Pltf. Dep., p. 140.) The only evidence that Plaintiff has to support her retaliation claim is that her termination occurred after she filed her EEOC charge. This is not enough to establish a *prima facie* case of retaliation. *Schneider v. GP Strategies Corp.*, 2017 U.S. Dist. LEXIS 17003, *20 (E.D. Ky. Feb. 7, 2017) ("the Sixth Circuit has repeatedly cautioned against inferring causation based on temporal proximity alone") (citing *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 471-72 (6th Cir. 2012)).

Further, given Plaintiff's admissions, she Plaintiff cannot overcome Regal's legitimate, nondiscriminatory reason for her termination—her inability to be approved to operate PIE and her refusal to accept a position that did not use PIE. *Id.* Regal told Plaintiff at the time of her displacement, which occurred before she filed her EEOC charge, that she would be terminated in

one year if she remained displaced and had not found a position. There simply is no evidence of pretext, defeating Plaintiff's retaliation claims under the ADA and KCRA.

**B. <u>Regal Did Not Interfere With Plaintiff's FMLA Rights Or Retaliate Against Her</u>**

**1. <u>Plaintiff's FMLA interference claim fails as she received all the leave she requested under the FMLA and was reinstated to her position</u>**

Plaintiff first FMLA claim is that Regal interfered with her right to leave. To establish such a claim, Plaintiff must show that: (1) she was an eligible employee, (2) Regal was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave Regal notice of her intention to take leave, and (5) Regal denied her FMLA benefits to which she was entitled. *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 697 (E.D. Ky. 2014) (citing *Grace v. USCAR and Bartech Tech. Servs.*, 521 F.3d 655, 669 (6th Cir. 2008)). Here, Plaintiff admits that she received all the FMLA leave she requested in the summer of 2014. (Pltf. Dep., pp. 124-126, dep. ex. 11; George Aff. ¶ 17.) She also admits that Regal reinstated her to her position when she returned from her leave in September 2014. (Pltf. Dep., p. 36.) These admissions defeat her interference claim.

**2. <u>Plaintiff's retaliation claim under the FMLA fails because she cannot show that her termination was causally connected to her medical leave</u>**

Plaintiff also claims that Regal retaliated against her because she took FMLA leave from July 2014 to September 2014. The analysis of Plaintiff's FMLA retaliation claim mirrors that of her ADA and KCRA claims. She must first establish a *prima facie* case of retaliation by show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 698 (E.D. Ky. 2014) (citing Bryson, 498 F.3d at 570). Even if Plaintiff could establish a *prima facie* case, she would need to show

that Regal's reasons for terminating her employee were pretexts for FMLA retaliation. *Banks*, 15 S. Supp. 3d at 699 (citing *Bryson*, 498 F.3d at 571).

The only adverse action that Plaintiff incurred was the termination of her employment in February 2016. As stated in Section III, A, 1, a, above, Plaintiff's displacement in February 2015 does not constitute an adverse action as she suffered no loss of pay. Plaintiff has no evidence that her FMLA leave was causally connected to her termination. Plaintiff cannot even establish temporal proximity between her FMLA leave and her termination as seventeen months elapsed between her return to work and her termination. Plaintiff has offered no other evidence of FMLA retaliation, nor can she show that Regal's reasons for terminating her employment were pretextual. As a result, Plaintiff's FMLA retaliation claims, like her FMLA interference claims, fail as a matter of law.

**C. Regal Did Not Violate GINA By Discriminating Against Plaintiff, Retaliating Against Her, Or Illegally Requesting Information From Her**

**1. Plaintiff cannot show that Regal discriminated against her because she was allegedly predisposed to develop cancer**

While few courts have analyzed claims under GINA, those that have analyzed claims of genetic discrimination have analyzed them using the traditional burden-shifting framework used for Plaintiff's ADA claim discussed in Section III, A, 1, above. *See Punt v. Kelly Servs.*, 2016 U.S. LEXIS 1018, *42-43 (D. Colo. Jan. 6, 2016) (citing *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, 49 F. Supp. 3d 321, 327-28 (E.D.N.Y. 2014)). Plaintiff cannot make a *prima facie* case of genetic discrimination because she cannot show that she was otherwise qualified for her position as she had not been approved to operate PIE, a requirement for the Value Added Packer Grade 5 position. (*See* III, A, 1, a, above).

Even if Plaintiff could establish a *prima facie* case of genetic discrimination, her claim still fails because she cannot show that the proffered reasons for her termination were a pretext

for genetic discrimination. If Regal were motivated by Plaintiff's alleged predisposition to develop cancer, it would not have offered to assist her in providing more limited information to Dr. Haskell. Regal also assured Plaintiff that it would not receive any medical information—including genetic information—from Dr. Haskell. Instead, it would simply receive a report on whether Plaintiff could safely operate PIE. (Pltf. Dep., pp. 64-65; George Dep., p. 49.) Finally, Regal offered Plaintiff multiple other positions that did not require the operation of PIE and therefore did not require Plaintiff to provide any information to Dr. Haskell whatsoever. (George Aff. ¶¶ 10, 11 and 15.) These facts make clear that Plaintiff was welcome to remain an employee of Regal, regardless of whether she had a predisposition to develop cancer. As a result, Plaintiff's claim of genetic discrimination fails as a matter of law.

**2. Plaintiff cannot show that Regal retaliated against her for filing an EEOC charge in which she alleged GINA violations**

Plaintiff's next claim under GINA is that Regal terminated her employment because she filed an EEOC charge in which she alleged violations of GINA. (Dkt. 29 Am Compl., ¶ 37.) Once again, the few courts that have analyzed such claims under GINA have found that the analysis is similar to that applied to Plaintiff's ADA retaliation claim in Section III, A, 2, above. *See Punt*, 2016 U.S. LEXIS 1018, *42-43 (citing *Conner-Goodgame v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 139477, *10 (N.D. Ala. Sept. 26, 2013)).

Plaintiff has admitted that no one at Regal ever mentioned her EEOC charge and that she has no reason to believe that her termination related to the filing of her EEOC charge. (Pltf. Dep., p. 140.) While her only potential evidence of retaliation is the fact that her termination occurred after the filing of her EEOC charge, "the Sixth Circuit has repeatedly cautioned against inferring causation based on temporal proximity alone" *Schneider v. GP Strategies Corp.*, 2017

U.S. Dist. LEXIS 17003, *20 (E.D. Ky. Feb. 7, 2017) (citing W*asek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 471-72 (6th Cir. 2012)).

Plaintiff also cannot show that the reasons Regal gave for her termination were a pretext for genetic discrimination. Her admission that she has no reason to believe that her termination related to her EEOC charge prevents a finding of pretext. Further, Regal gave Plaintiff multiple ways to remain an employee without providing genetic information to Dr. Haskell. Regal assured her that any information given to Dr. Haskell would not come to Regal. Regal also offered to help Plaintiff satisfy Dr. Haskell without providing all the information she believed he had requested. Finally, Regal offered to give Plaintiff her choice of positions that would not require a medical exam as they would not require the operation of PIE. Regal did not terminate Plaintiff until she had rejected all of these options for an entire year. If Regal desired to retaliate against Plaintiff for alleging violations of GINA, it would not have offered her multiple chances to remain an employee. Plaintiff's GINA retaliation claims must therefore fail.

**3. <u>Plaintiff cannot show that Regal violated GINA by improperly requested genetic information from her</u>**

Finally, Plaintiff claims that Regal improperly requested her genetic information when Dr. Haskell requested her medical records, which contained information about her family history of health problems. (Dkt. 29 Am. Compl., ¶ 36.) According to Plaintiff, Dr. Haskell issued a document after his examination indicating that he could not complete the exam until he received additional information. (*Id.* at ¶ 17.) Specifically, he requested the following information:

> Medical Condition of Concern: Surgery - All medical records 1. Current diagnosis of your medical condition, 2. The treatment you have received to date, 3. The prognosis, 4. Any relevant tests (include results), 5. List of any medications you are receiving and any restrictions arising from their use, 6. Any restrictions or limitations that may limit your activities at home or at work and the time period during which those restrictions will be in effect, 7. Any additional information that your medical provider thinks would help us to make our medical recommendation.

(*Id.*; *see also* Pltf. Dep., p. 43, dep. ex. 5; George Dep., p. 29, dep. ex. 5.) In her deposition, Plaintiff testified that the medical records she felt were responsive to this request included two references to her family medical history of cancer, heart disease, and strokes. (Plf. Dep., p. 128-130, 139, dep. ex. 12.) Plaintiff admitted that she did not tell anyone at Regal that she objected to the production of her medical records to Dr. Haskell because of they contained family history information. (*Id.* at 64-65.) She also admitted that she did not offer to produce the records requested by Dr. Haskell with the family history information redacted. (*Id.* at 139.)

The regulations under GINA state that the "general prohibition against requesting or requiring. . . genetic information does not apply: (1) where a covered entity inadvertently requests or requires genetic information of the individual of family member of the individual." 29 C.F.R. § 1635.8(b)(1). The regulations further provide that an employer can establish "that a particular request for genetic information was inadvertent if its request for medical information was not 'likely to result in a covered entity obtaining genetic information.'" 29 C.F.R. § 1635.8(b)(1)(i)(C). The regulation gives the following example of an inadvertent request: "where an overly broad response is received in response to a tailored request for medical information." *Id.*

The situation here is just like the example from the regulation. Plaintiff admits that her surgery was discussed during her examination with Dr. Haskell but she refused to provide him with any information about it. Specifically, the records from Dr. Haskell's examination show on her medical history that Plaintiff "refuses to provide information on the nature of the surgery." In response, Dr. Haskell made a narrowly tailored request for the medical records relating to her surgery. He even listed seven categories of information that he needed from these records and none of those categories sought Plaintiff's family history or other genetic information.

Given Dr. Haskell's request, there was no way for Dr. Haskell or Regal to anticipate that Plaintiff would produce family history information. All of the information that he requested was related to his physical examination of Plaintiff to determine if she could operate PIE. Further, Regal assured Plaintiff that it would not receive the records that she provided to Dr. Haskell. Regal also offered to work with Plaintiff to provide more limited records to Dr. Haskell, but she did not cooperate with this request. Instead, she only produced a conclusory note from Dr. Moon which said that she could operate PIE, without giving any information regarding her surgery. Plaintiff did not explain to Regal that she did not wish to produce her family history. If she had, Regal would have helped her to produce the requested information with the family history omitted or redacted. Given these facts, Dr. Haskell's request, at most, inadvertently requested genetic information and therefore did not violate GINA.

## IV. CONCLUSION

Regal terminated Plaintiff's employment because she was not medically cleared to operate a forklift as required by Regal policy, nor did she accept a different position that did not require medical clearance. Plaintiff has no evidence that these reasons are a pretext for disability or genetic discrimination. Likewise, Plaintiff has no evidence that these reasons are a pretext for retaliation for exercising her rights under the ADA, FMLA, GINA, or the KCRA. If Regal wished to discriminate or retaliate against Plaintiff, it would not have worked with her for a year to either produce the necessary medical records or accept a new position. Regal granted Plaintiff the FMLA leave she requested and reinstated her when her leave ended. Finally, to the extent that Dr. Haskell's request for medical records could be interpreted to encompass Plaintiff's genetic information, the request for genetic information was inadvertent and therefore did not violation GINA. Since there is no evidence showing that Plaintiff violated any of the cited statutes, Regal is entitled to summary judgment on all of Plaintiff's claims.

Respectfully submitted,

*s/ Mark D. Scudder*
Mark D. Scudder
(mark.scudder@btlaw.com)
**BARNES & THORNBURG LLP**
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802
Telephone: (260) 425-4618

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2018 a true and correct copy of the foregoing was filed with the Court's ECF filing system which will send notice of electronic filing to the following:

W. Kash Stilz, Jr.
ROUSH AND STILZ, P.S.C.
9 West Eleventh Street
Covington, Kentucky 41011-3003
kash@roushandstilzlaw.com

*s/ Mark D. Scudder*
Mark D. Scudder

DMS 11384625v1