**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENUTCKY**
**COVINGTON DIVISION**

| | | |
|---|---|---|
| SHEILA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:16-cv-00134-DLB-CJS |
| | ) | |
| REGAL BELOIT AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Regal terminated Plaintiff's employment after she refused to provide historical medical records in connection with a routine medical examination, refused Regal's assistance in complying with the doctor's requests, and refused other work assignments which would have allowed her to continue working at Regal without producing the medical records at issue. As a result, Regal moved for summary judgment on all Plaintiff's claims as there are no genuine issues of material fact. [Dkt 36.]

In Plaintiff's Response [Dkt 42], she focuses most of her attention on her claims under the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA"). Although she argues that Regal was not entitled to require Plaintiff to submit to a medical examination, she is incorrect. Regal was entitled to require Plaintiff to submit to medical examination as it had a business necessity to do so. Plaintiff tries to negate Regal's need for the medical exam by arguing that operating powered industrial equipment ("PIE") was not an

essential function of her position. Plaintiff's argument is undermined by her admission that after she was unable to operate PIE, she was unable to perform the key tasks of her position.

Plaintiff's claims under the Family Medical Leave Act ("FMLA") and Genetic Information Nondiscrimination Act ("GINA") fare no better. Specifically, Plaintiff has no evidence that Regal violated her rights under either statute or retaliated against her for any protected activity. As set forth below, Regal is entitled to summary judgment on all of Plaintiff's claims.

## II. ARGUMENT AND AUTHORITY

### A. Regal Did Not Discriminate Against Plaintiff Or Retaliate Against Her In Violation Of The ADA or KCRA

#### 1. Plaintiff's claims of disability discrimination fail as a matter of law

Plaintiff claims that Regal discriminated against her because of her cancer in violation of the ADA and KCRA. (Dkt. 29, Amended Complaint, ¶¶ 9 and 32.) The parties agree that to survive Regal's motion for summary judgment, Plaintiff must establish a *prima facie* case of disability discrimination and then must show that Regal's proffered reasons for its actions were a pretext for disability discrimination. (Response, pp. 11, 18.) As discussed below, Plaintiff cannot meet these requirements.

##### a. Plaintiff cannot establish a *prima facie* case of disability discrimination

###### i. Plaintiff cannot show that her displacement was an adverse employment action

While the parties agree that Plaintiff's termination in February 2016 was an adverse employment action, Plaintiff argues in her Response that her displacement in February 2015 was also an adverse employment action. (Response, pp. 12-13.) An adverse employment action is "a materially adverse change in the terms of . . . employment." *Kocsis v. Multi–Care Management*,

*Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). "Termination, decrease in wage or salary, change in title, diminished material responsibilities, or a material loss of benefits are all examples of a materially adverse change." *Mensah v. Michigan Dept. of Corrections*, 621 Fed. Appx. 332, 334 (6th Cir. 2015). Plaintiff asserts that she suffered an adverse employment action when she was displaced because it constituted a "demotion." (Response, p. 12.) Plaintiff's characterization of her displacement is gravely misleading, as she was not demoted. Instead, she remained in her original position but did not operate PIE. Her pay remained the same. In effect, she was on light-duty. As a result, there was nothing "adverse" about this action.

**ii. <u>Plaintiff was not qualified for her position.</u>**

Plaintiff fails to establish a *prima facie* case of disability discrimination because she cannot show that she was qualified for her position as a Value Added Packer, Grade 5. It is undisputed that Regal requires medical screens every three years when employees renew their license to operate PIE. (Response, p. 4.) Under this policy, Plaintiff was due for her tri-annual medical exam in 2015.

Plaintiff disputes that operating PIE is an essential function of the Value Added Packer, Grade 5 position because the job description for the position did not specifically list the operation of PIE as an essential function. (Response, pp. 2-3.) However, the job description did not contain a category entitled "essential functions." It did, however, state that employees needed to "process specific customer orders" and follow "established packing procedures." Plaintiff acknowledged that she used two "forklift-like" pieces of equipment in her position to "help her perform the essential functions of her job." (Response, p. 2.) Regal's "established packing procedures" include the regular use of PIE. (Affidavit of Joe DeVillez ("DeVillez Aff."), ¶ 7.) The job description also mentions the ability to work comfortably at heights up to 20 feet. (*Id.* ¶ 8.) Given the weight of the parts involved, the height at which they are stored in

the warehouse, and the speed at which the parts must be gathered, PIE must be used. (*Id.* ¶ 5 and 8.)

Plaintiff did not explain how she could perform these admittedly essential functions without using the PIE. In fact, Plaintiff admitted that once she was displaced and was barred from using PIE, she had to have other employees use PIE to assemble the drive kits assigned to her. (Pltf. Dep, p. 66.) Employees in the Value Added Packer, Grade 5 position operate PIE at least 50 percent of the time. (DeVillez Aff., ¶ 10.) As a result, the inability to use PIE prevented Plaintiff from performing at least 50 percent of her prior duties. Given the high percentage of time spent operating PIE, there can be no question that it was an essential function of the position. *See* 29 C.F.R. § 1630.2(n)(3) (the factors to consider when determining whether a function is essential include the employer's judgment as to which functions are essential; the amount of time spent on the job performing the function; and the consequences of not requiring the incumbent to perform the function); *see also Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 726 (6th Cir. 2000) (adopting these factors set forth in 29 C.F.R. § 1630.2(n)(3)).

At the time of the employment decision at issue, Plaintiff refused to provide Dr. Haskell with medical information that would enable him to make a determination as to whether she could operate PIE and was therefore medically qualified for the Value Added Packer, Grade 5 position. (Opening Brief, p. 10.) As a result, Dr. Haskell did not provide Plaintiff with an opinion that she was medically qualified to operate PIE. In the absence of such an opinion and pursuant to Regal's policy, Regal displaced Plaintiff with the option to bid on open positions that did not require a PIE operator's license. (Response, p. 4.) Accordingly, Regal cannot be held liable for Plaintiff's voluntary displacement. Plaintiff's own failure to establish that she was medically qualified for the position, alone, is fatal to her claims.

Moreover, Plaintiff states that "the facts in this case overwhelmingly demonstrate [Plaintiff] was perfectly capable of performing her job duties, including operation of power equipment." (Response, p. 18.) This argument fails because Plaintiff unequivocally could not demonstrate that she was qualified for the position. In fact, Plaintiff admitted in her deposition that she refused to provide requested medical documentation required by the doctor before medical qualification (Response, p. 7), and therefore a determination could not be made as to whether she was qualified. Instead, Plaintiff assumes that since she operated PIE after returning from FMLA leave, it must have been safe for her to continue doing so. This is incorrect—given the constantly changing nature of every employee's health, Regal's policy requires a medical screening every three years to ensure that employees can continue to safely use PIE.[1]

Under the ADA, Regal is entitled to "qualification standards" if they are "job-related for the position in question and [are] consistent with business necessity." 29 U.S.C. § 12112(b)(6). The EEOC's regulations define "qualification standards" as "the personal and professional attributes including the . . . physical, medical, safety and other requirements established by [the employer] as requirements which an individual must meet in order to be eligible for the position held or desired." 29 C.F.R. § 1630.2(q). The regulations also provide that employers may "make inquiries or to require medical examinations when there is a need to determine whether an employee is still able to perform the essential functions of his or her job." 29 C.F.R. § 1630.14(c). Indeed, ensuring that all employees, including Plaintiff, are able to safely operate PIE by confirming his/her physical health is both job-related and consistent with business necessity. *See e.g. Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F. Supp. 653, 660-61 (D.P.R.

[1] Regal's policy does not contain categorical prohibitions on employees with certain conditions using PIE. Instead, it asks a physician, like Dr. Haskell, to make an individual inquiry based on the circumstances particular to the employee at issue. Here, Dr. Haskell could not make such a determination as Plaintiff refused to cooperate with him.

1997) (holding that, as a matter of law, an employer's request for an employee's "full medical record" as well as an independent medical examination after a two month medical leave of absence is job-related and consistent with business necessity); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 812 (6th Cir. 1999) (stating "health problems that significantly affect an employee's performance of essential job functions justify ordering a physical examination"); *Rio v. Runyon*, 972 F. Supp. 1446 (S.D. Fla. 1997) (upholding an employer's request that a postal worker be cleared by both her therapist and her cardiologist after medical leave).

Further, Dr. Haskell's request for Plaintiff's medical records relating to her FMLA leave was not only lawful, but appropriate to determine whether Plaintiff was medically qualified to operate PIE. (Opening Brief, p. 10.) Numerous courts have held that such inquiries and exams do not violate the ADA. *See e.g., Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437,438 (6th Cir. 1991) (holding that an employee who was hospitalized for psychiatric treatment was required to provide medical certification as to ability to return to work); *Miller v. Champaign Comm. Unit Sch. Dist.*, 983 F. Supp. 1201 (C.D. Ill. 1997) (granting summary judgment to an employer on plaintiff's ADA claim stemming from mandatory psychiatric exam before returning to work after a medical leave); *Sullivan v. River Valley Sch. Dist.*, 20 F. Supp. 2d 1120 (E.D. Mich. 1998) (awarding summary judgment to the employer on plaintiffs ADA claim stemming from the employer's request that the employee undergo psychiatric testing before returning to work). Regal's inquiry in no way violated the ADA or KCRA as evidenced by the EEOC regulations and the case law.

Simply, Plaintiff cannot show that she was medically qualified for the position, dooming her *prima facie* case. Therefore, Regal is entitled to summary judgment on Plaintiff's ADA and KCRA claim.

**b. Plaintiff did not establish sufficient facts demonstrating that the termination of her employment was a pretext for disability discrimination**

Even if Plaintiff could establish a *prima facie* case of disability discrimination—which she cannot—her claims would only survive Regal's motion for summary judgment if she could show that the proffered reason for her termination—her failure to be approved to operate PIE or accept a new position—was a pretext for disability discrimination. To show pretext, Plaintiff must show "both that the [Regal's] proffered reason was not the real reason for its action and that [Regal's] real reason was unlawful." *Land v. Southern States Coop., Inc.*, 2016 U.S. Dist. LEXIS 122183, *34 (E.D. Ky. Sept. 9, 2016) (citing *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015)).

Plaintiff attacks Regal's legitimate, nondiscrimination reason by questioning the legality of the medical screening, claiming she was required to turn over medical information that the doctor was not permitted to request. (Response, p. 19.) This argument, however, fails because Regal was entitled to require medical examinations to determine whether an employee is able to perform the essential functions of his or her job. *See Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437,438 (6th Cir. 1991); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 812 (6th Cir. 1999). Plaintiff was terminated because she was not a "qualified" individual for the Value Added Packer, Grade 5 position. There is no evidence that Regal prevented Plaintiff from applying for other positions for which she was qualified. To the contrary, for approximately 12 months, Regal encouraged Plaintiff to bid on open positions; she, however, did not do so. (Response, p. 8.) More importantly, the facts demonstrate that Regal's legitimate business decision was based on Plaintiff's failure – during the 12-month displacement – to show she was qualified for the Value Added Packer, Grade 5 position or accept another position for which she

was qualified. Plaintiff voluntarily chose to forgo either option. As a result, she cannot show pretext.

Accordingly, Regal is entitled to summary judgment on Plaintiff's ADA and KRCA discrimination claims.

**2. <u>Plaintiff has not offered sufficient evidence to establish retaliation</u>**

Plaintiff's retaliation claim fares no better than her discrimination claims. Plaintiff cannot show that her protected activity – filing her initial EEOC charge – caused her termination. Plaintiff admits that no one at Regal ever mentioned her EEOC charge and that she has no reason to believe that her termination related to the filing of her EEOC charge. (Pltf. Dep., p. 140, Dkt. 36-4.) The only evidence that Plaintiff has to support her retaliation claim is that her termination occurred after she filed her EEOC charge. This is not enough to establish a prima facie case of retaliation. *Schneider v. GP Strategies Corp*., 2017 U.S. Dist. LEXIS 17003, *20 (E.D. Ky. Feb. 7, 2017) ("the Sixth Circuit has repeatedly cautioned against inferring causation based on temporal proximity alone") (*citing Wasek v. Arrow Energy Servs., Inc*., 682 F.3d 463, 471-72 (6th Cir. 2012)).

In the alternative, Plaintiff argues that she was retaliated against for "opposing a practice made unlawful by the ADA." This argument completely lacks merit. Several courts have held that the failure to cooperate with the employer regarding such medical inquiries constitutes legitimate grounds for termination. *See e.g., Porter v. United States Alumoweld Co., Inc*., 125 F.3d 243, 246 (4th Cir. 1997) (holding that although the employee's personal physician certified that the employee was capable of returning to work, the employee's failure to comply with the employer's requested "functional capacity exam" was legitimate grounds to terminate the employee); *Johnson v. Goodwill Industries of E. N. Carolina, Inc*., 1998 U.S. Dist. LEXIS 21040

(E.D.N.C. Dec. 16, 1998) (holding that employee's failure to submit to fitness for duty examinations was grounds for termination).

Further, given Plaintiff's admissions, she cannot overcome Regal's legitimate, nondiscriminatory reason for her termination—her refusal to be approved to operate PIE or to accept a position that did not use PIE. Regal told Plaintiff at the time of her displacement, which occurred before she filed her EEOC charge, that she would be terminated in one year if she remained displaced and did not bid on an open position. Plaintiff was well aware of this timeline, but yet refused to take steps to remedy the issue. (Response, p. 8.) Regal gave Plaintiff advanced warning, and it was Plaintiff that refused to take action. There simply is no evidence of pretext, defeating Plaintiff's retaliation claims under the ADA and KCRA.

## B. Regal Did Not Interfere With Plaintiff's FMLA Rights Or Retaliate Against Her

### 1. Plaintiff's FMLA interference claim fails as she received all the leave she requested under the FMLA and was reinstated to her position

Plaintiff's first FMLA claim is that Regal interfered with her right to leave. To establish such a claim, Plaintiff must show that, among other things, Regal denied her FMLA benefits to which she was entitled. *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 697 (E.D. Ky. 2014) (citing *Grace v. USCAR and Bartech Tech. Servs.*, 521 F.3d 655, 669 (6th Cir. 2008)). Here, Plaintiff admits that she received all the FMLA leave she requested in the summer of 2014. (Pltf. Dep., pp. 124-126, dep. ex. 11, Dkt. 36-4; George Aff. ¶ 17, Dkt. 36-2.) As such, this claim fails as a matter of law.

Plaintiff's second FMLA claim is that Regal interfered with her reinstatement. Again, Plaintiff admits that Regal reinstated her to her position when she returned from her leave in September 2014. (Pltf. Dep., p. 36, Dkt. 36-4.) Plaintiff argues that she cannot locate precedent which states that if an employer initially reinstates an employee, the employee cannot maintain

an interference claim if she is later removed from the job position. Regal provides this Court with just such precedent. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274 (6th Cir. 2012) (Employer did not interfere with employee's use of FMLA leave, even though he was terminated less than a month after reinstatement, where he received all FMLA leave to which he was entitled, he was reinstated upon doctor's certification, and he resumed his normal work routine until his termination); *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368 (6th Cir. 2017) (Employer was not liable for FMLA interference with respect to employee who was demoted and then fired after took she FMLA leave for mental health issues; employee received all of the FMLA leave she requested and was reinstated following those absences). Given this caselaw, Plaintiff's FMLA interference claim also fails as a matter of law.

**2. <u>Plaintiff's retaliation claim under the FMLA fails because she cannot show that her termination was causally connected to her medical leave</u>**

Plaintiff also claims that Regal retaliated against her because she took FMLA leave from July 2014 to September 2014. The analysis of Plaintiff's FMLA retaliation claim mirrors the analysis of her retaliation claims under the ADA and KCRA. *See Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 698 (E.D. Ky. 2014) (citing *Bryson*, 498 F.3d at 570).

As previously discussed, Plaintiff's displacement was not an adverse action. The only adverse action that Plaintiff incurred was the termination of her employment in February 2016. Notably, her termination occurred approximately 17 months after she was reinstated. Likewise, she was advised at the time of her displacement – approximately 12 months prior to her termination –that she would be terminated if she remained displaced and did not bid on an open position. Plaintiff has offered no evidence of FMLA retaliation, nor can she show that Regal's reasons for terminating her employment were pretextual.

**C. Regal Did Not Violate GINA By Discriminating Against Plaintiff, Retaliating Against Her, Or Illegally Requesting Information From Her**

**1. Plaintiff cannot show that Regal discriminated against her because she was allegedly predisposed to develop cancer**

While few courts have analyzed claims under GINA, those that have analyzed claims of genetic discrimination have analyzed them using the traditional burden-shifting framework used for Plaintiff's ADA claim discussed in Section III, A, 1, above. *See Punt v. Kelly Servs.*, 2016 U.S. LEXIS 1018, *42-43 (D. Colo. Jan. 6, 2016) (citing *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, 49 F. Supp. 3d 321, 327-28 (E.D.N.Y. 2014)). Plaintiff cannot make a *prima facie* case of genetic discrimination because she cannot show that she was otherwise qualified for her position as she had not been approved to operate PIE, a requirement for the Value Added Packer Grade 5 position. (DeVillez. Aff., ¶¶ 5, 7, 8, 9, and 10.)

Plaintiff offered no evidence demonstrating discrimination in violation of GINA. If Regal was motivated by Plaintiff's alleged predisposition to develop cancer, it would not have offered to assist her in providing more limited information to Dr. Haskell. Regal also assured Plaintiff that it would not receive any medical information—including genetic information—from Dr. Haskell. Instead, it would simply receive a report on whether Plaintiff could safely operate PIE. (Pltf. Dep., pp. 64-65, Dkt. 36-4; George Dep., p. 49, Dkt. 36-3.) Finally, Regal offered Plaintiff multiple other positions that did not require the operation of PIE and therefore did not require Plaintiff to provide any information to Dr. Haskell whatsoever. (George Aff. ¶¶ 10, 11 and 15, Dkt. 36-2.) If Regal's intent was to eliminate employees with a predisposition to develop cancer, it would not have offered Plaintiff other positions. Given these facts, Plaintiff cannot show that her termination constituted genetic discrimination.

**2. <u>Plaintiff cannot show that Regal retaliated against her for which she alleged GINA violations</u>**

Plaintiff has admitted that no one at Regal ever mentioned her EEOC charge and that she has no reason to believe that her termination related to the filing of her EEOC charge. (Pltf. Dep., p. 140, Dkt. 36-4.) While her only potential evidence of retaliation is the fact that her termination occurred after the filing of her EEOC charge, "the Sixth Circuit has repeatedly cautioned against inferring causation based on temporal proximity alone" *Schneider v. GP Strategies Corp*., 2017 U.S. Dist. LEXIS 17003, *20 (E.D. Ky. Feb. 7, 2017) (*citing Wasek v. Arrow Energy Servs., Inc*., 682 F.3d 463, 471-72 (6th Cir. 2012)).

Plaintiff also cannot show that the reasons Regal gave for her termination were a pretext for genetic discrimination. Her admission that she has no reason to believe that her termination related to her EEOC charge prevents a finding of pretext. Further, Regal gave Plaintiff multiple ways to remain an employee without providing genetic information to Dr. Haskell. Regal assured her that any information given to Dr. Haskell would not come to Regal. Regal also offered to help Plaintiff satisfy Dr. Haskell without providing all the information she believed he had requested. Finally, Regal offered to give Plaintiff her choice of positions that would not require a medical exam as they would not require the operation of PIE. Regal did not terminate Plaintiff until she had rejected all of these options for an entire year. If Regal desired to retaliate against Plaintiff for alleging violations of GINA, it would not have offered her multiple chances to remain an employee. Plaintiff's GINA retaliation claims must therefore fail.

**3. <u>Plaintiff cannot show that Regal violated GINA by improperly requesting genetic information from her</u>**

In her deposition (and only in retrospect), Plaintiff claimed that she did not want to provide more records to Dr. Haskell because her medical records indicated that she had a family history of cancer, high blood pressure, and strokes. (Pltf. Dep., pp. 128-130, 139, dep. ex. 12,

Dkt. 36-4.) As a threshold matter, Regal maintains that it did not request genetic information. Plaintiff improperly blends the concepts of medical information and genetic information. Plaintiff claims that "[the medical records] also contained much more detail about the manifestation of her disease than the FMLA documents she submitted for her leave of absence." (Response, p. 28.) GINA prohibits discrimination based on genetic information and not on the basis of a manifested condition, whereas the ADA prohibits discrimination on the basis of manifested conditions that meet the definition of disability." 75 Fed. Reg. 68,931 (2010). "Genetic information" does not include medical information that is not genetic information about a manifested disease, disorder, or pathological condition that has or may have a genetic basis. *Poore v. Peterbilt of Bristol, L.L.C*., 852 F. Supp. 2d 727 (W.D. Va. 2012); *Hoffman v. Family Dollar Stores, Inc*., 99 F. Supp. 3d 631 (W.D. N.C. 2015) (HIV diagnosis, kidney failure, and viral gastroenteritis not genetic information); *Ortiz v. City of San Antonio Fire Dept*., 806 F.3d 822 (5th Cir. 2015); 42 U.S.C.A. § 2000ff-9; 29 C.F.R. § 1635.12. GINA does not prohibit an employer from requesting non-genetic medical information about a manifested disease, disorder, or pathological, *even if it has or may have a genetic basis or component*. 42 U.S.C. § 2000ff-9 (emphasis added); 29 C.F.R. § 1635.12. The EEOC explained when promulgating GINA's regulations, "[t]he fact that an individual has the diagnosed disease, disorder, or pathological condition will not be considered genetic information about the individual; nor will information about the signs or symptoms the individual has." 75 Fed. Reg. 68,917 (2010).

Even if Plaintiff could show that Regal's request was overly broad——which she cannot do—the regulations provide that an employer can establish "that a particular request for genetic information was inadvertent if its request for medical information was not 'likely to result in a covered entity obtaining genetic information.'" 29 C.F.R. § 1635.8(b)(1)(i)(C). The regulation

gives the following example of an inadvertent request: "where an overly broad response is received in response to a tailored request for medical information." *Id*.

The situation here is just like the example from the regulation. Plaintiff admits that her surgery was discussed during her examination with Dr. Haskell but she refused to provide him with any information about it. Specifically, the records from Dr. Haskell's examination show on her medical history that Plaintiff "refuses to provide information on the nature of the surgery." To be clear, Dr. Haskell made a narrowly tailored request for the medical records relating *to her surgery*. Dr. Haskell listed seven categories of information that he needed from those records and *none of those categories sought Plaintiff's family history or other genetic information*. Given these facts, Dr. Haskell's request, at most, inadvertently requested genetic information and therefore did not violate GINA.

## III. CONCLUSION

Regal terminated Plaintiff's employment because she was not medically cleared to operate powered industrial equipment as required by Regal policy, nor did she accept a different position that did not require medical clearance. Plaintiff has no evidence that these reasons are a pretext for disability or genetic discrimination. Likewise, Plaintiff has no evidence that these reasons are a pretext for retaliation for exercising her rights under the ADA, FMLA, GINA, or the KCRA. If Regal wished to discriminate or retaliate against Plaintiff, it would not have worked with her for a year to either produce the necessary medical records or accept a new position. Regal granted Plaintiff the FMLA leave she requested and reinstated her when her leave ended. Finally, to the extent that Dr. Haskell's request for medical records could be interpreted to encompass Plaintiff's genetic information, the request for genetic information was inadvertent and therefore did not violate GINA. Since there is no evidence showing that Plaintiff

violated any of the cited statutes, Regal is entitled to summary judgment on all of Plaintiff's claims.

Respectfully submitted,

*s/ Mark D. Scudder*
Mark D. Scudder
(mark.scudder@btlaw.com)
**BARNES & THORNBURG LLP**
888 South Harrison Street, Suite 600
Fort Wayne, Indiana 46802
Telephone: (260) 425-4618

*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2018, a true and correct copy of the foregoing was filed with the Court's ECF filing system which will send notice of electronic filing to the following:

W. Kash Stilz, Jr.
ROUSH AND STILZ, P.S.C.
9 West Eleventh Street
Covington, Kentucky 41011-3003
kash@roushandstilzlaw.com

*s/ Mark D. Scudder*
Mark D. Scudder